UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

THE HANSEN FOUNDATION, INC.,
a New Jersey not for profit
corporation; and HANSEN
HOUSE, LLC, a New Jersey
limited liability
company
        *Plaintiffs*,

        v.

CITY OF ATLANTIC CITY, a
municipal corporation of the
State of New Jersey; the
ATLANTIC CITY ZONING BOARD OF
ADJUSTMENT; and KIMBERLY K.
HOLMES, in her official
capacity as Acting
Commissioner of the NEW
JERSEY DEPARTMENT OF
COMMUNITY AFFAIRS

        *Defendants*.

No. 1:21-cv-20392 (NLH/EAP)

OPINION

---

**APPEARANCES**:

Christopher S. D'Esposito, Esq.
Keith Alan Davis, Esq.
Stephanie E. Farrell, Esq.
Nehmad Perillo Davis & Goldstein, P.C.
4030 Ocean Heights Avenue
Egg Harbor Township, NJ 08234

    *Attorneys for Plaintiffs*.

Richard D. Trenk, Esq.
Trenk Isabel Siddiqi & Shahdanian P.C.
290 W. Mt. Pleasant Ave.
Suite 2370
Livingston, NJ 07039

    *Attorneys for Defendants City of*

>   *Atlantic City and Atlantic City*
>   *Zoning Board of Adjustment*

Patrick D. Tobia, Esq.
Gordon & Rees
18 Columbia Turnpike
Suite 220
Florham Park, NJ 07932

>   *Attorney for Defendant*
>   *Kimberly K. Holmes*

**HILLMAN**, **District Judge**

The matter involves a dispute between a group home for women recovering from drug and alcohol addiction and the City of Atlantic City, whose enforcement of various zoning provisions has deemed Plaintiffs' facility noncompliant.  Plaintiffs also name Sheila Oliver as a defendant, in her role as Commissioner of the New Jersey Department of Community Affairs,[1] the sole regulatory agency of Cooperative Sober Living Residences, and as the agency tasked with the oversight of the City pursuant to the Municipal Stabilization and Recovery Act.

---

[1] This Court notes the passing of Defendant Oliver on August 1, 2023, while serving in her capacity as New Jersey Lieutenant Governor.  Pursuant to Fed.R.Civ.P. 25, "An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution."  As such, this Court shall refer to the current Acting Commissioner of the New Jersey Department of Community Affairs, Kimberly K. Holmes, as Moving Defendant for purposes of the instant discussion.

Currently pending before the Court is Defendant Holmes' motion for summary judgment based upon a settlement agreement reached by the parties prior to commencement of the instant litigation. For the reasons expressed below, the motion will be granted.

## BACKGROUND

The Court takes its facts from the parties' Statements of Material Fact submitted pursuant to Local Civil Rule 56.1(a).[2]

Plaintiffs previously sued the Department of Community Affairs ("DCA")[3] with respect to the licensing and regulation of their Cooperative Sober Living Residences ("CSLRs"). (Pls.' Supp. SMF ¶ 1; Defs.' Reply Supp. SMF ¶ 1.) The DCA maintained in part that Plaintiffs' CSLRs were rooming/boarding houses subject to the regulations of the Rooming and Boarding House Act of 1979, and the DCA's regulations for a "Class F" license for CSLRs, which limited the number of residents of a CSLR to ten (10). (Pls.' Supp. SMF ¶ 2; Defs.' Reply Supp. SMF ¶ 2.)

Plaintiffs previously sued the DCA in State court to restrain them from enforcing provisions of the Rooming and

---

[2] For purposes of the instant discussion, this Court shall refer to Defendants' Statement of Material Facts as "SMF," Plaintiffs' Response as "RSF," Plaintiff's Supplemental Statement of Material Facts as "Pls.' Supp. SMF" and Defendants' Reply thereto as "Defs.' Reply Supp. SMF."

[3] For purposes of this motion, the "DCA" is the Defendant Kimberly K. Holmes, in her official capacity as Acting Commissioner of the New Jersey Department of Community Affairs.

Boarding House Act against Plaintiffs' CSLRs. (Pls.' Supp. SMF ¶ 3; Defs.' Reply Supp. SMF ¶ 3.) In the Federal litigation, Plaintiffs claimed in part that DCA failed to grant Plaintiffs a reasonable accommodation excepting them from the requirements of the Rooming and Boarding House Act under the Federal Fair Housing Act and other related civil rights legislation, and failed to stay enforcement of the DCA's fines/penalties against Plaintiffs' properties. (Pls.' Supp. SMF ¶ 4; Defs.' Reply Supp. SMF ¶ 4.)

The parties entered into settlement negotiations, during which time Plaintiffs sent the DCA a letter, dated July 23, 2021, regarding the "Lawsuit and Land Use Application Involving Atlantic City." (SMF ¶ 5; RSMF ¶ 5.) The letter began as follows:

> Our firm represents Hansen House, LLC and the Hansen Foundation, Inc. (collectively, "Hansen") in a lawsuit against the City of Atlantic City ("City") which is currently pending in the Atlantic County Vicinage of the Superior Court of New Jersey under Docket ATL-L-2559-19. As you are counsel for the Department of Community Affairs ("DCA") which is currently overseeing the City, we seek your assistance in resolving Hansen's matters with the City in an amicable manner and without litigation.

(SMF ¶ 6; RSMF ¶ 6.)

The letter explained the basis for Plaintiffs' claim that the DCA should become more involved in Plaintiffs' litigation against the City of Atlantic City:

> Importantly, DCA has a dual interest in Hansen's application as both the sole regulatory agency of CSLRs and as the agency tasked with the oversight of the City pursuant to the Municipal Stabilization and Recovery Act ("Act"). Under the Act, DCA's Local Finance Board has the right to "control[] litigation and the municipality's legal affairs." See N.J.S.A. 52:27BBBB-5a(3)(d).

(SMF ¶ 7; RSMF ¶ 7.)

As an exhibit to this July 23, 2021 letter, Plaintiffs attached a copy of an October 31, 2019 letter that the DCA had issued to Plaintiffs regarding this issue, and acknowledging to Plaintiffs that the residents of a CSLR are a "single housekeeping unit." (SMF ¶ 8; RSMF ¶ 8.)

Plaintiffs subsequently sent the DCA a second letter, dated August 4, 2021, regarding the "Lawsuit and Land Use Application Involving Atlantic City." (SMF ¶ 9; RSMF ¶ 9.) Attached as an exhibit to the August 4, 2021 letter, was another copy of the October 31, 2019, letter that the DCA had issued to Plaintiffs. (SMF ¶ 10; RSMF ¶ 10.)

On August 24, 2021, Plaintiffs and the DCA entered into a Settlement Agreement ("Agreement"). (SMF ¶ 1; RSMF ¶ 1; Pls.' Supp. SMF ¶ 6; Defs.' Reply Supp. SMF ¶ 6.) The Agreement provided in part:

> 3. Release of Claims. In consideration for the Settlement Agreement herein provided, Plaintiffs, Hansen, Jennifer Hansen, its owners, principals, shareholders, agents, employees, assigns, corporate affiliates, parents, subsidiaries, and successors ("Releasees") to the maximum extent permitted by law, hereby irrevocably and unconditionally release and

5

> discharge DCA and its past or present employees and/or agents, from any and all actions, claims, demands, damages, judgments, executions, liabilities, legal, monetary, equitable or otherwise, including appeals, obligations, attorney's fees, and causes of action from the beginning of time to the date of this Settlement Agreement relating to the licensing of Hansen's CSLRs, which were asserted, or could have been asserted in the Civil Action and State Action, pursuant to the Parties' dealings. This releases all claims, including those of which Hansen is not aware and those not mentioned in this Release.

(SMF ¶ 2; RSMF ¶ 2; Pls.' Supp. SMF ¶ 9; Defs.' Reply Supp. SMF ¶ 9.)

The Agreement further provided:

> 4. Plaintiffs initiated the Civil Actions and State Court Action to challenge and enjoin the regulatory actions taken by the DCA towards Hansen's sober living homes under the Rooming and Boarding House Act of 1979 ("Act") and to request that DCA accommodate the residents of Hansen's sober living homes by treating them as the functional equivalent of a family pursuant to the federal Fair Housing Act and related federal and state civil rights legislation. The DCA disputed the claims and defended the Civil Actions and the State Court Action.

(Pls.' Supp. SMF ¶ 7; Defs.' Reply Supp. SMF ¶ 7.)

Additionally, the Agreement included a provision that stated there were no other pending or related claims:

> 14. No Other Pending Claims. The Releasees, DCA, the Bureau of Rooming and Boarding House Standards, and the Office of Regulatory Affairs hereby agree and represent that they have no other pending legal actions or claims against each other including in any court, arbitration forum, governmental or administrative forum or agency, or other dispute resolution forum that are in any way related to the Civil Actions and State Court Action or any dispute described herein.

(SMF ¶ 3; RSMF ¶ 3.)

Attached as "Exhibit A" to the Agreement, was the October 31, 2019 letter from DCA to Plaintiffs, regarding the Hansen property located at 16 S. Tallahassee Avenue, Atlantic City, New Jersey and the procedure required for obtaining a CSLR designation for a Class F rooming house license. (SMF ¶ 4; RSMF ¶ 4.)

On December 7, 2021, Plaintiffs filed the instant lawsuit against Atlantic City, claiming in part that the City's zoning ordinances discriminate against disabled individuals in recovery and the City allegedly refused to grant Plaintiffs a reasonable accommodation as required by the Fair Housing Act and other federal legislation. (Pls.' Supp. SMF ¶ 15; Defs.' Reply Supp. SMF ¶ 15.) On March 4, 2022, Plaintiffs filed an Amended Complaint. (Pls.' Supp. SMF ¶ 15; Defs.' Reply Supp. SMF ¶ 15.) The Amended Complaint contains claims against Defendant Holmes in her capacity as [Acting] Commissioner of the DCA, due to the DCA's oversight and control of the City under the Municipal Stabilization Act N.J.S.A. 52:27BBBB-1, *et seq*. (Pls.' Supp. SMF ¶ 16; Defs.' Reply Supp. SMF ¶ 16.)[4]

---

[4] See *supra* n. 1.

**DISCUSSION**

I.   **Subject Matter Jurisdiction**

This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331.  This Court may exercise supplemental jurisdiction over Defendants' State law claims under 28 U.S.C. § 1367.

II.  **Standard of Review**

Summary judgment is appropriate when the court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. Importantly,

> In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."

Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."); see also Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof.") (citing Celotex, 477 U.S. at 325).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'"

9

Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 257.

**III. Analysis**

On December 7, 2021, Plaintiffs brought the instant action, asserting claims under the Fair Housing Act, 42 U.S.C. § 3604(f) ("FHA")(Count One); Americans With Disabilities Act, 42 U.S.C. § 12132 ("ADA")(Count Two); New Jersey Law Against Discrimination ("NJLAD")(Count Three); Municipal Liability under 42 U.S.C. § 1983 (Count 4); and, the New Jersey Municipal Law Use Law, N.J.S.A. 40:55D-10(g)(1)-(2)("MLUL")(Count 5). (ECF No. 1.) On March 4, 2022, Plaintiffs Amended their Complaint to include claims under the Rehabilitation Act, 29 U.S.C. § 794(a) ("RHA") (Amended Count Three) and the New Jersey Civil Rights Act, N.J.S.A. 10:6-1, 6-2 ("NJCRA") (Amended Count Four). Count Five became Plaintiffs' claim for relief under the NJLAD and Count Six was added to include their previously raised Municipal Land

10

Use claim.  Plaintiffs eliminated their Section 1983 claim from the Amended Complaint.  (ECF No. 17.)

Defendant Holmes is now seeking judgment on Counts One, Two and Three of Plaintiffs' Amended Complaint, claiming a prior settlement agreement between the parties precludes Plaintiffs from pursuing these claims against her.

In response, Plaintiffs allege the claims are different than those previously raised, and were not the subject of the settlement agreement reached a few months before Plaintiffs commenced this litigation.  In particular, Plaintiffs argue the instant claims against Defendant Holmes "ha[ve] nothing to do with fines against Hansen's properties or the DCA's licensing and regulation of Hansen's properties[,]" as resolved by the settlement agreement.  (ECF No. 52 at 4.)  Instead, Plaintiffs contend they pertain to Atlantic City's refusal to grant reasonable accommodations to Hansen and its disabled residents.  The DCA has been named a party due to its role overseeing the City under the Municipal Stabilization Act N.J.S.A. 52:27BBBB-1, et seq. (ECF No. 52 at 4.)

It is well-settled that:

> Claim preclusion prevents claims between the same parties from being litigated anew after a final judgment has been entered in a previous suit. The plaintiff is required to "present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence." "[A] somewhat modified form of res judicata" applies if a settlement agreement triggers a dismissal and a defendant's

11

> consequent discharge. The express terms of a settlement agreement, not merely the terms of the judgment, determine the bounds of preclusion after a settlement. Judicially approved settlement agreements are considered final judgments on the merits for the purposes of claim preclusion. Additionally, ***the identity of the cause of action refers not only to claims actually litigated, but to those that could have been litigated in the earlier suit if they arise from the same underlying transaction or events***.

Toscano v. Conn. Gen. Life Ins. Co., 288 F. App'x 36, 38 (2008).

A plain reading of the relevant documents of record clearly demonstrate that Plaintiffs' current claims arise out of the same transactions and occurrences[5] as before and involve the same parties. For instance, Count One of the Amended Complaint alleges in pertinent part:

> 241. The City and the Board's <u>denials of the CLUC applications and the Application</u>, respectively, were intentionally discriminatory in that the City and the Board acquiesced to community pressures to keep the Home out of the community because of discriminatory animus toward the disabled population that Hansen would serve.
> 242. The City and the Board used the Code, Ordinance, and the City's police powers as a pretext to exclude handicapped individuals from residing in the Home and the City and the Board enforced ordinances to deny housing to persons in recovery from drugs and alcohol.
> \* \* \* \*
> 248. <u>By failing to act upon Hansen's request for assistance with the City and for a CLUC to be issued</u>, and by failing to exercise its broad oversight powers under the Act which empowered DCA to provide such assistance and relief to remedy unlawful

---

[5] To the extent Plaintiffs raise a fire code issue to distinguish their current suit from the Agreement reached between the parties, it is not relevant. (ECF No. 52 at 7-8.) The fire code issue began after Plaintiffs filed their Amended Complaint and is not the subject of any pending litigation of record.

> discrimination, <u>DCA failed to reasonably accommodate Hansen in violation of the Act</u>.

(Am. Compl. ¶¶ 241-42, 248) (citations omitted) (emphasis added).

In its initial State litigation that precipitated the August 24, 2021 Agreement, Plaintiffs' claim under the Fair Housing Act alleged in pertinent part: "The Defendant denied the CLUC without any finding that any accommodation presented an undue financial or administrative burden upon the City." (D.N.J. 1:19-cv-18608, ECF No. 1-1 at 16, ¶ 87.)  Even earlier than that, in 2013, Plaintiffs raised a Fair Housing Act claim against DCA, alleging in pertinent part that DCA "failed to make reasonable accommodations in its enforcement of the Rooming House Act so as to afford the Plaintiffs an equal opportunity to use and enjoy the aforementioned dwelling[.]"  (D.N.J. 3:13-cv-06803, ECF No. 1 at 20, ¶ 99(e).)  Said litigation is captioned as one of the matters covered by the settlement agreement.  (ECF No. 51-4 at 2.)

Finally, the court must consider the two letters of record authored by Plaintiffs' counsel prior to execution of the Agreement.  The first, dated July 23, 2021, states in relevant part:

> Importantly, DCA has a dual interest in Hansen's application as both the sole regulatory agency of CSLRs and as the agency tasked with the oversight of the City pursuant to the Municipal Stabilization and Recovery Act ("Act").  Under the Act, DCA's Local

> Finance Board has the right to "control[] litigation and the municipality's legal affairs." See N.J.S.A. 52;27BBBB-5a(3)(d)."

(ECF No. 51-5 at 3.)

The second, dated August 4, 2021, acknowledged:

> Hansen was constrained to file the land use application after the City's Zoning Officer denied Hansen's application for a Certificate of Land Use Compliance on the basis that the residents of the CSLR were not a "family." However, DCA has acknowledged to Hansen in writing (see enclosed) that the residents of a CSLR are a "single housekeeping unit." Consequently, DCA should direct the City to issue a Certificate of Land Use Compliance [CLUC] to Hansen. See City of Atlantic City Code, Section 163-15 (defining "family" as persons occupying a dwelling as a "single housekeeping unit").

(ECF No. 51-5 at 6) (emphasis added).

Again, both pieces of correspondence predate the August 24, 2021 Agreement, which specifically precluded future claims that could have been asserted prior to execution of the Agreement, but were not:

> [T]o the maximum extent permitted by law, hereby irrevocably and unconditionally release and discharge DCA and its past or present employees and/or agents, from any and all actions, claims, demands, damages, judgments, executions, liabilities, legal, monetary, equitable or otherwise, including appeals, obligations, attorney's fees, and causes of action from the beginning of time to the date of this Settlement Agreement relating to the licensing of Hansen's CSLRs, which were asserted, or could have been asserted in the Civil Action and State Action, pursuant to the Parties' dealings. This releases all claims, including those of which Hansen is not aware and those not mentioned in this Release.

(ECF No. 51-4 at 8, ¶ 3) (emphasis added).

14

At their core, the pre-settlement lawsuits and correspondence make clear that Plaintiffs were seeking to have DCA/Defendant Holmes oversee and direct the City's decisions through the oversight power vested in it via the Municipal Stabilization Act N.J.S.A. 52:27BBBB-1, *et seq*.[6]  This is exactly what Plaintiffs are again attempting to accomplish in the instant litigation, commenced less than four months after the Agreement was finalized.  Plaintiffs' current characterization of the Agreement as merely pertaining to the issue of fines and permission for them to continue operating its CSLRs, is belied by the record.  The parties' past legal and factual positions as articulated in the pleadings and other filings are a matter of public record, ascertainable and immutable.

This Court further concludes that for the reasons set forth above, Counts Two and Three of Plaintiffs' Amended Complaint fare no better.  Similar to Count One, Count Two seeks a reasonable accommodation by DCA under the ADA and asks that Defendant Holmes issue Plaintiffs (or cause to be issued) a CLUC for the Home.  (ECF No. 17 at 30.)  Count Three seeks a reasonable accommodation by DCA under the Rehabilitation Act and asks that Defendant Holmes issue Plaintiffs (or cause to be

---

[6] In their Response to the instant motion, Plaintiffs write: "[T]he Settlement Agreement does not reference any claims against the DCA in its capacity overseeing the City."  (ECF No, 52 at 5.)  In view of the record before this Court, Plaintiffs' claim is clearly unfounded.

15

issued) a CLUC for the Home.  (ECF No. 17 at 32.)  All of these claims and remedies as set forth in the Amended Complaint were known to Plaintiffs and could have been specifically pursued at the time of settlement.  See <u>Gotthelf v. Toyota Motor Sales, U.S.A., Inc</u>., Civil Action No.: 10-4429, 2012 U.S. Dist. LEXIS 62045, at *24 (D.N.J. May 3, 2012) (finding claim preclusion where settlement agreement expressly "include[ed] claims that have been or could have been asserted.").  Because they were not, Plaintiffs are precluded from doing so now.

## **CONCLUSION**

In view of the foregoing, Defendant Holmes' Motion for Summary Judgment on Counts One, Two and Three of Plaintiffs' Amended Complaint will be granted.

An appropriate Order will accompany this Opinion.


Dated:  9/15/23                    /s/ Noel L. Hillman
Camden, New Jersey                 Noel L. Hillman, U.S.D.J.